**David C. Higgs**, OSB #114193
david@beaconforjustice.com
**Talia Y. Guerriero**, OSB #115271
talia@beaconforjustice.com
BEACON EMPLOYMENT LAW
1000 SW Broadway, Suite 2130
Portland, OR 97205
503-673-1388 (phone number)
503-564-4689 (Fax Number)

**Of Attorneys for Plaintiff**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **ANTHONY LANE**, | Case No. 3:25-cv-1036 |
| Plaintiff, | **COMPLAINT** |
| v. | **UNLAWFUL EMPLOYMENT PRACTICES:** |
| **AMAZON.COM SERVICES, LLC**, | Title I of the Americans with Disabilities Act (ADA) 42 U.S.C. § 12112, *et seq*.; ORS 659A.109, .112 & .118 |
| Defendant. | **DEMAND FOR JURY TRIAL** |

## <u>INTRODUCTION</u>

1.

Defendant Amazon employed Plaintiff Anthony Lane for several years at one of its warehouses in Portland, Oregon. Because Mr. Lane is completely blind, he required reasonable accommodation, which Amazon initially provided under a 2021 settlement

agreement resolving Mr. Lane's prior disability complaint. When Mr. Lane developed an additional disability – a back impairment that limited his ability to perform certain physical tasks – Amazon's accommodation efforts ceased entirely.

Rather than engage in the interactive process required by federal and state law, Amazon removed Mr. Lane from his position and placed him on unpaid leave for over six months while purporting to search for alternative work arrangements. Despite Mr. Lane's repeated requests for simple accommodations – including a mere two-hour shift change that would have allowed him to return to his previous successful role – Amazon's bureaucratic processes failed him at every turn. Amazon's agents provided contradictory information, failed to meaningfully evaluate available positions, and ultimately abandoned any good faith effort to accommodate Mr. Lane's disabilities.

Amazon subjected Mr. Lane to a maze of administrative delays, denials, and broken promises that culminated in his termination in April 2025 - a termination that occurred not because Mr. Lane could not perform available work, but because Amazon refused to provide the reasonable accommodations that would have enabled his continued employment. Amazon's conduct was particularly egregious given Mr. Lane's demonstrated ability to perform his job functions successfully for years.

Plaintiff brings this action against Defendant Amazon.com Services, LLC ("Amazon") under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 et seq., and Oregon disability protection statutes ORS 659A.109, .112, and .118.

/ / /

Page 2 of 31 - COMPLAINT

**PARTIES AND VENUE**

1.

At times material to this complaint, plaintiff **Anthony Lane** was a resident and citizen of the state of Oregon and was at all material times employed by Defendants at its Portland, Oregon warehouse facility within Multnomah County.

2.

Defendant **Amazon.com Services, LLC ("Amazon")** is a foreign limited liability corporation headquartered in Seattle, Washington and authorized to do business in Oregon. Defendant is an "employer" under ORS 659A.001 conducting regular, sustained business in Multnomah County.

3.

At all material times, Defendant Amazon employed Plaintiff at its warehouse facility in Portland, Oregon, and Plaintiff relied on the actual or apparent authority of Defendant Amazon's employees, supervisors, managers, and other agents.

4.

This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because an issue in this case arises under federal law. This Court also has diversity jurisdiction pursuant to 28 U.S.C. 1332(a) because the parties respectively are from Oregon and Washington and thus complete diversity of citizenship exists, and the amount in controversy is greater than $75,000. Finally, the Court has supplemental jurisdiction over

Plaintiff's state law claims pursuant to 42 U.S.C. § 1367 because the state law claims arise from the same nucleus of operative facts as the federal claims.

5.

This Court is the appropriate venue pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred within the District of Oregon, Portland Division.

**STATEMENT OF FACTS**

6.

Plaintiff is a person who is legally blind such that his visual impairment is total and permanent. He uses a white cane as a mobility aid.

7.

Plaintiff began his employment with Defendant Amazon as a seasonal employee on or around November 30, 2019. In his employment application, Plaintiff indicated he had a visual disability requiring accommodation. During Plaintiff's onboarding and training processes in December 2019, he was assisted by Julie Allen, a vocational rehabilitation safety expert.

8.

Plaintiff was employed for only a few weeks in 2019 until it became clear that Amazon would not provide him certain accommodation he needed to perform his work effectively, although such accommodations were possible. By early January, 2020, Amazon informed Plaintiff that it could not place him in its Portland facility because it deemed the

environment unsafe. On February 21, 2020, Amazon informed Plaintiff that it had terminated his employment.

9.

Plaintiff thereafter brought a charge of discrimination to the Equal Employment Opportunity Commission ("EEOC"). Plaintiff and Defendant ultimately resolved the EEOC charge via settlement agreement in February 2021.

10.

In exchange for Plaintiff's promise to drop his EEOC charge, Defendant Amazon made several promises under the February 2021 settlement agreement, including but not limited to: (1) immediately reinstating Plaintiff to his job; (2) providing training to Amazon's site managers and leadership regarding reasonable accommodation for visually impaired employees; (3) consulting with experts and provide appropriate accessible technology for visually impaired employees; (4) review and provide accessibility to visually impaired employees in certain specific employment positions; and (5) working in good faith with the National Federation for the Blind ("NFB") to conduct outreach to the visually impaired community regarding reasonable accommodation and accessible technologies offered by Amazon to prospective employees.

11.

Plaintiff returned to work at Amazon's distribution facility in February 2021. Plaintiff was rehired as a "return to station" ("RTS") associate (known by facility employees as a "debriefer"), and typically worked a five-day workweek at thirty (30) hours per week.

Plaintiff performed his job at Defendant's distribution facility called "DPD2" in Portland, Oregon.

12.

Plaintiff performed his work without incident until December 2022, when he suffered a workplace injury incident involving his shoulder. Plaintiff filed a claim for Oregon's workers' compensation benefits and was awarded such benefits. After a period of treatment, Plaintiff returned to his normal duties on or around August 9, 2023.

13.

However, when Plaintiff returned to work in August 2023, HR representative Diego Paez informed him that he could no longer perform his position of RTS ("debriefer") because it was "unsafe" for Plaintiff to be outside. Plaintiff informed Paez that he had worked as a debriefer from February of 2021 up until his workplace injury in December 2022. Paez continued to refuse to return Plaintiff to his position and declined to explain to Plaintiff why the job was unsafe.

14.

Plaintiff's job duties were not the only change upon his return to work in August 2023. A chair that Plaintiff regularly used was missing from his work area. The chair had previously been included as an accommodation for Plaintiff that served at least two distinct functions. First, the chair allowed Plaintiff a place to sit so he would not be forced to stand for the duration of his shift. Second, the chair provided Plaintiff a "landmark" in his work space that assisted him with orienting himself. Both functions of the chair were

critical to Plaintiff's ability to perform his work efficiently and effectively. Without the chair to provide a relatively permanent landmark to assist Plaintiff orienting himself in space, he became more anxious while working.

15.

Beginning in August 2023, Plaintiff made repeated requests to DPD2 HR representatives to return or replace his chair because it allowed him to perform his work safely and effectively and provided relief to his back pain. On or around August 23, 2023, Plaintiff contacted Amazon's Disability and Leave Services ("ADLS") to report that his chair was missing from his work area. Defendant's agents did not provide Plaintiff with a replacement chair until on or around February 21, 2024, which was six months after he made his initial request.

16.

When Plaintiff returned to work in August 2023, Amazon placed him in a new position called "warehouse reset," which most workers referred to as "bagging." Bagging consists placing empty bags in appropriate slots that are later used by other employees to fulfill orders, using special equipment to locate proper placement of bags on racks. However, without his chair, the reaching, bending, and lifting required for the bagging position began to cause or exacerbate Plaintiff's back pain.

17.

By the end of August 2023, Plaintiff typically performed bagging duties for three to four hours per workday, but his back pain prevented him from continuing until the end of

his shift. When Plaintiff's back pain prevented him from continuing to work, Plaintiff would report the situation to his direct supervisor, Aaron Armenio. Typically, Mr. Armenio would inform Plaintiff that because there were no other duties Plaintiff could perform at DPD2 considering his vision and back impairments, Mr. Armenio would direct Plaintiff to cease working for the day. Accordingly, most days, Plaintiff would conclude his workday early and return to his home after receiving permission from Mr. Armenio. Thus, although Plaintiff was scheduled to work from 2:00 p.m. to 8:30 p.m., he often went home between 5:00 p.m. and 6:00 p.m.

18.

Plaintiff did not wish to leave work early because it impacted his earnings. As a result, Plaintiff requested that DPD2 transition him from his bagging position back to the RTS "debriefing." Debriefing consists of scanning truck driver badges and leftover packages they would have after their deliveries for the day. Debriefing duties are dependent on when delivery trucks return to the facility and are unloaded of undelivered items. The trucks typically begin returning to the facility later in the day, beginning at 4:00 p.m. rather than 2:00 p.m. Accordingly, Plaintiff requested that Defendant change his work schedule to 4:00 p.m. to 10:00 p.m. to allow him to perform debriefing duties.

19.

Defendant's agents at DPD2 provided equivocal responses to Plaintiff's repeated request to return to his previous debriefing duties and shifting his schedule to begin two

hours later in the day. Plaintiff continued to perform bagging duties and continued to regularly receive permission to leave work early due to his continuing back pain.

20.

On or around November 18, 2023, Plaintiff requested medical leave due to increasing back pain and to seek more rigorous treatment. Amazon approved Plaintiff's leave request, ultimately for the time period from November 26, 2023 to January 25, 2024.

21.

Following a course of treatment including physical therapy, Plaintiff returned to work again on February 6, 2024.

22.

Having received no clear answer from DPD2 management regarding his request to shift his hours and perform debriefing duties as an accommodation for his ongoing back pain, Plaintiff filed a formal request for clarity on the situation in March 2024. The request went to Defendant's human resources representative Diego Paez. Ultimately, Mr. Paez informed Plaintiff that in order to have a shift and position change, if only a two-hour adjustment, he would need to follow Amazon's formal accommodation request procedures.

23.

On or around June 3, 2024, Plaintiff initiated a formal accommodation request through Defendant's web-based portal as the DPD2 managers required him to do.

/ / /

24.

Federal and state law require employers to engage in an interactive process with disabled employees to identify reasonable accommodations. The EEOC requires employers to: (1) analyze the job's essential functions; (2) consult with the disabled employee about abilities and limitations; (3) identify and assess potential accommodations; and (4) select appropriate accommodation considering the employee's preference. Amazon failed to follow any of these steps. Despite Plaintiff's repeated requests for a two-hour schedule adjustment to return to his successful RTS position, Amazon never analyzed whether specific work hours were essential, meaningfully consulted with Plaintiff about his abilities, or evaluated obvious accommodations like schedule modifications, which are standard accommodations that employers must consider unless they can prove undue hardship.

25.

In July 2024, Plaintiff's back pain continued to worsen due to Defendant's failure to provide reasonable accommodation, due to exacerbation from the bending and lifting required in his bagging duties. Also in July 2024, Plaintiff took additional medical leave to focus on treating his back issues, during which time Plaintiff continued to attempt to engage in the interactive process for accommodations upon his return.

26.

When Plaintiff returned to DPD2 in September 16, 2024, he had work restrictions including no lifting, pushing, pulling more than 20 pounds, no bending, and the ability to

take short breaks throughout the day to sit down. Plaintiff provided a note from his doctor outlining the restrictions. Based on the restriction, Mr. Armenio informed Plaintiff that there was "no work" for Plaintiff to do and failed to engage in any type of interactive process. Because there was no work for him to perform, Mr. Armenio told Plaintiff free to leave. Plaintiff left the job site after about 30 minutes.

27.

The next day, September 17, Plaintiff reported to work, but Amazon again only told him that there was no work for him to do, and he was sent home.

28.

While a representative named "Karen" called Plaintiff on September 18, 2024, his Amazon disability accommodations manager Seth Basham did not contact him until October 16, 2025. Mr. Basham stated that he would visit Plaintiff's job site the following week.

29.

The following Sunday, Mr. Basham met Plaintiff and Plaintiff's attorney outside the front entrance of the DPD2 site.[1] Mr. Basham explained that he was going to survey the job site to evaluate potential jobs Plaintiff could perform. Plaintiff worked that day while Mr. Basham was in the facility, but Mr. Basham did not meet or speak to Plaintiff that day.

///

---

[1] Defendant Amazon's agents at DPD2 refused to allow Plaintiff's attorney to enter the premises to view Plaintiff's workstation or participate in the interactive process.

30.

Plaintiff continued to show up to work during this period. On occasion, Plaintiff would be able to perform a portion of the RTS position. But after doing that for a short amount of time, Mr. Armenio would run out of work to assign to Plaintiff, and Plaintiff was released to return to his home.

31.

On or around November 7, 2024, Mr. Basham called Plaintiff as he was leaving for work. Mr. Basham informed Plaintiff that Defendant Amazon was placing him on leave of absence while he looked for accommodations for Plaintiff at other warehouses within a 25-mile radius of Plaintiff's home in Hillsboro, Oregon.

32.

Mr. Basham did not contact Plaintiff again until he sent an email on or around November 30, 2024. Mr. Basham asked Plaintiff if he would be able to work at Defendant's facility in Troutdale, Oregon. Plaintiff replied via email that he could not work at the Troutdale facility because his commute would be nearly one hour each way and he would need to arrange costly transportation to and from the facility each work day because he was blind. Moreover, the Troutdale facility could not offer Plaintiff work shifts that were consistent with his medical need to work daytime or swing shifts.

33.

Plaintiff saw his medical provider on December 2, 2024. He was given the following work release: no restriction on hours worked per day, limitation to lifting/pulling pushing up

to 45 pounds, and no bending, climbing ladders, stooping, or squatting. The release reflected a beginning date of November 7, 2024, with a return to modified duty on March 18, 2025. Plaintiff was also diagnosed with generalized anxiety disorder, which is exacerbated by working high-volume shifts with numerous employees. The increased number of people creates additional obstacles and congestion, resulting in a less safe work environment for Plaintiff due to his blindness.

34.

In January 2025, Mr. Basham once again contacted Plaintiff by email. He inquired if Plaintiff could work in Troutdale from 7am to 6pm, or from 6pm to 5:30am. Both shifts, however, were beyond Plaintiff's limitation to no more than six hours of work per day, and neither shift was feasible for Plaintiff's transportation needs due to distance from his home and attendant cost. Plaintiff informed Mr. Basham that he could not accept work in Troutdale for these reasons.

35.

On or around February 3, 2025, Plaintiff was contacted by Amazon accommodation consultant Andrea Wiggins. She informed Plaintiff that she was now his disability liaison through Amazon, although this confused Plaintiff because he believed Mr. Basham was his assigned disability liaison. Ms. Wiggins directed Plaintiff to search a website for available Amazon warehouse jobs and then get back to her. Plaintiff visited the Amazon site as directed and attempted to perform searches for available positions. Plaintiff's search for openings at Amazon warehouses within a 25-mile radius rendered no matches. Later the

same day, Plaintiff sent Ms. Wiggins an email explaining that his search was unsuccessful, as he saw no openings. He also informed Ms. Wiggins that because he is blind, he has special transportation needs. He asked her to get in touch with Mr. Basham so she could understand fully his accommodation needs.

36.

Ms. Wiggins did not timely respond to Plaintiff's February 3 email, so Plaintiff sent her a second email on or around February 5, reiterating many of the same points he made previously. He further explained that the only change he required from the DPD2 site was to move his hours from 2pm to 8pm, to 4pm to 10pm but that he had been denied the ability to perform work at the DPD2 site since making that accommodation request. He further informed her that the long period of unpaid leave created a financial hardship. He also reiterated his request that she contact Mr. Basham for additional information. Finally, he made a formal request to be reinstated at his former position at DPD2 and said that his only wish was to return to work.

37.

On February 6, 2025, Plaintiff received from Defendant Amazon an automated email approving his request for leave from November 7, 2024 to February 7, 2025. The email further indicated: "Your work restrictions are currently being reviewed by your Accommodation Consultant (AC). You will be notified by the AC once a decision has been made."

/ / /

38.

On February 7, 2025, Ms. Wiggins responded to Plaintiff's email. She stated: "We understand your concerns. Unfortunately, we can't assist with your homesite denial. The Job [sic] search reassignment team assist [sic] with trying to find jobs at other Sister Sites [sic] that can accommodate your restrictions. Since you are currently on an [sic] medical leave you will need to contact our leaves team at [phone number] to see what is needed for you to return to work."

39.

On or around February 7, 2025, Plaintiff contacted his employee resource center and spoke with a representative named "Michael." Plaintiff asked to speak to Andrea Wiggins because she was working on his matter. Michael informed Plaintiff that based on Michael's review of the information, Defendant Amazon *was not* looking to place him in another warehouse. Plaintiff was completely shocked by the revelation.

40.

Plaintiff subsequently requested his personnel file from Michael. Michael indicated he would not provide the employee file because Plaintiff "couldn't have it." Michael stated that Plaintiff could only obtain his file from DPD2's HR department.

41.

Plaintiff requested his personnel file directly from DPD2's HR department via email. He received no response. To date, Defendant Amazon has failed to provide Plaintiff with his personnel file in violation of ORS 652.750.

42.

On February 12, 2025, Defendant Amazon sent Plaintiff an email entitled "Job Reassignment- Case Closure". The email stated that Defendant had received a medical document with updated restrictions, so a "new accommodation case" had been created and sent to Plaintiff's "home site" for review. It further indicated his "current accommodation case for Job Search Reassignment will be closed".

43.

The same day, February 12, 2025, Plaintiff received a second email from Defendant Amazon informing him that it had received his request for accommodation and requested he provided "medical documentation to support your request." It directed him to upload such information via Amazon's "AtoZ" application.

44.

On February 14, 2025, Amazon sent another email, this time indicating that Plaintiff's work restrictions "are currently being reviewed by your Accommodation Consultant (AC)", and that he would be "notified by the AC once a decision has been made." On February 18, 2025, Amazon notified Plaintiff via email that his leave request from November 7, 2024 to March 4, 2025 was approved. The email also indicated that Plaintiff "ha[d] failed to provide documentation supporting [his] updated Clinical Information [sic]." However, Plaintiff had already provided such information several times, including to Mr. Basham and to Ms. Wiggins.

/ / /

45.

On February 20, 2025, Defendant Amazon notified Plaintiff via email that his accommodation request was denied. Defendant's email provided: "-Denied/Home path not feasible, with no alternate paths at the worksite aligning with restrictions. TLD not an option either, TLD roles are not available at the site." Defendant also indicated that Plaintiff could not return to work, and that Defendant "will begin exploring alternative options."

46.

On March 24, 2025, Defendant Amazon confusingly notified Plaintiff via email that "your accommodation request has been partially approved" and stated "your Role Modification (non-pregnancy) from 3-24-2025 has been denied" due to "no available roles at your site that met your limitations."

47.

On March 27, 2025, Defendant Amazon notified Plaintiff via an email entitled "Job Search Reassignment Introduction" that he should initiate a job search at the website previously suggested to him by Ms. Wiggins, which rendered no results. He was informed he would remain on leave, but that the "Job Search" period would last only up to seven days. The email indicated it was sent by Accommodation Consultant Hannah Go.

48.

On April 4, 2025, Defendant Amazon notified Plaintiff via email, again from Ms. Go, that his "Accommodation Options [were] Exhausted." The email indicated Defendant "cannot provide reasonable accommodation that would enable you to perform your job or

a vacant position at the company. We will be in touch with you 7 days prior to your leave exhaust date to explore whether there is a vacant position at the company that you are qualified to perform. If that search does not result in a successful placement, we will unfortunately have to end your employment."

49.

On April 11, 2025, Ms. Go sent Plaintiff an email notifying him that his "Accommodation Options [were] Exhausted" and that his "employment with Amazon will end effective 4/18/2025." Plaintiff subsequently received a notice that Amazon terminated his employment on April 18, 2025. Instead of engaging in the required interactive process, Amazon placed Plaintiff in administrative limbo for over six months and terminated his employment without conducting any meaningful accommodation analysis.

**DAMAGES ALLEGATIONS**

50.

As a result of the unlawful actions alleged herein, Plaintiff has suffered, and will continue to suffer, economic damages. Plaintiff is entitled to recover from defendant such lost wages and benefits of employment and other economic losses in such amount as may be established at trial.

51.

Plaintiff is entitled to reinstatement or reemployment. If reinstatement or reemployment is not feasible, Plaintiff is entitled to recover an appropriate amount in lost wages and lost earning capacity in an amount to be determined at trial.

52.

As a result of Defendants' actions alleged herein, Plaintiff has suffered and is entitled to recover for his noneconomic damages, including physical, emotional, and mental harm in an amount found to be appropriate by a jury based on the evidence presented at trial.

53.

Plaintiff is entitled to a declaration that Defendants acted in violation of the statutes set forth in this complaint for relief and equitable relief enjoining defendant from future violations of the statutes set forth herein, and such other relief in favor of Plaintiff on such terms as the court may direct.

54.

Defendant has acted with malice and/or has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and have acted with a conscious indifference to the health, safety, and welfare of others. Defendant should be assessed punitive damages, pursuant to ORS 659A.885; ORS 20.107; ORS 654.062(6)(a); 42 U.S.C. § 1981(b); and 42 U.S.C. § 12205; as set forth below.

55.

Plaintiff is entitled to recover his reasonable attorney's fees, reasonable expert witness fees, and other costs of the action to be paid by the defendant pursuant to ORS 659A.885 and 20.107.

/ / /

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### ORS 659A.112 – Disability Discrimination

56.

Plaintiff re-alleges and incorporates by reference the prior paragraphs of this complaint.

57.

ORS 659A.112(1) prohibits an employer from discharging an employee or discriminating "in compensation or in terms, conditions or privileges of employment" on the basis of disability.

58.

At all material times, Plaintiff had a disability as defined by ORS 659A.104. Plaintiff's disabilities substantially limit major life activities but Plaintiff could perform the essential functions of Plaintiff's job, with or without accommodation.

59.

Defendants violated ORS 659A.112 by, without limitation, subjecting Plaintiff to adverse employment action, including reducing Plaintiff's hours and terminating Plaintiff, based on Plaintiff's disability and/or Defendants' need to provide reasonable accommodation, resulting in damages.

/ / /

/ / /

60.

As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer mental stress, humiliation, inconvenience, and loss of enjoyment of life all to his non-pecuniary loss in an amount to be determined at trial. Plaintiff is entitled to compensatory damages pursuant to ORS 659A.885

61.

As a result of Defendant's unlawful conduct, Plaintiff has incurred and continues to incur lost wages and benefits in an amount to be proven at trial. Plaintiff will continue to lose income and benefits in the future. Plaintiff is entitled to economic damages, including pursuant to ORS 659A.885.

62.

Defendant has acted with malice and/or has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and have acted with a conscious indifference to the health, safety, and welfare of others. Defendant should be assessed punitive damages, including pursuant to ORS 659A.885.

63.

Plaintiff also seeks his costs and attorneys' fees pursuant to ORS 659A.885.

/ / /

/ / /

/ / /

/ / /

## SECOND CLAIM FOR RELIEF

## ORS 659A.112 & ORS 659A.118

## Disability Discrimination & Failure to Accommodate Disability

64.

Plaintiff re-alleges and incorporates by reference the prior paragraphs of this complaint.

65.

At all material times, Plaintiff had a disability as defined by ORS 659A.104. Plaintiff's disabilities substantially limit major life activities but Plaintiff could perform the essential functions of Plaintiff's job, with or without accommodation.

66.

ORS 659A.112(2)(e) makes it unlawful for an employer to "not make reasonable accommodation to the known physical or mental limitations of a qualified individual with a disability[.]"

67.

Defendants violated ORS 659A.112(2)(e) and ORS 659A.118 by, without limitation, failing to engage in the interactive process to determine reasonable accommodations for Plaintiff's disability and failing to make such accommodations, resulting in damages.

68.

As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer mental stress, humiliation, inconvenience, and loss of enjoyment of

life all to his non-pecuniary loss in an amount to be determined at trial. Plaintiff is entitled to compensatory damages, including pursuant to ORS 659A.885.

69.

As a result of Defendant's unlawful conduct, Plaintiff has incurred and continues to incur lost wages and benefits in an amount to be proven at trial. Plaintiff will continue to lose income and benefits in the future. Plaintiff is entitled to economic damages, including pursuant to ORS 659A.885

70.

Defendant has acted with malice and/or has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and have acted with a conscious indifference to the health, safety, and welfare of others. Defendant should be assessed punitive damages, including pursuant to ORS 659A.885.

71.

Plaintiff also seeks his costs and attorneys' fees pursuant to ORS 659A.885.

**THIRD CLAIM FOR RELIEF**

**ORS 659A.109 – Discrimination for Invoking Disability-Related Rights**

72.

Plaintiff re-alleges and incorporates by reference the prior paragraphs of this complaint.

/ / /

/ / /

Page 23 of 31 - COMPLAINT

73.

ORS 659A.109 prohibits discrimination against an employee who invokes the disability-related protections contained in ORS 659A.103 to ORS 659A.145, including by requesting a reasonable disability accommodation.

74.

Defendants violated ORS 659A.109 by, without limitation, subjecting Plaintiff to adverse terms and conditions of employment and/or terminating Plaintiff's employment on the basis of Plaintiff's invocation of disability-related rights, including requesting accommodation(s), resulting in damages.

75.

As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer mental stress, humiliation, inconvenience, and loss of enjoyment of life all to his non-pecuniary loss in an amount to be determined at trial. Plaintiff is entitled to compensatory damages, including pursuant to ORS 659A.885

76.

As a result of Defendant's unlawful conduct, Plaintiff has incurred and continues to incur lost wages and benefits in an amount to be proven at trial. Plaintiff will continue to lose income and benefits in the future. Plaintiff is entitled to economic damages, including pursuant to ORS 659A.885.

/ / /

/ / /

77.

Defendant has acted with malice and/or has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and have acted with a conscious indifference to the health, safety, and welfare of others. Defendant should be assessed punitive damages, including pursuant to ORS 659A.885.

78.

Plaintiff also seeks his costs and attorneys' fees pursuant to ORS 659A.885.

**FOURTH CLAIM FOR RELIEF**

**Americans with Disabilities Act (ADA) 42 U.S.C. §12111, *et seq.***

**Disability/ Perceived Disability Discrimination**

79.

Plaintiff re-alleges and incorporates by reference the prior paragraphs of this complaint.

80.

Plaintiff is a "qualified individual" with a "disability" as those terms are defined in 42 U.S.C. §§ 12102 and 12111.

81.

As set forth above, at all material times, Plaintiff had disabilities covered by the ADA that substantially limited major life activities. Despite his disabilities, Plaintiff could perform the essential functions of the position with or without accommodation.

/ / /

82.

At all relevant times Defendants knew about Plaintiff's disabilities.

83.

Alternatively, Defendants perceived Plaintiff to be disabled and/or Plaintiff had a record of such disabilities.

84.

Defendants' termination and/or constructive discharge of Plaintiff was substantially motivated by his disability and/or perceived disability and constitutes unlawful disability discrimination in violation of the ADA, resulting in damages.

85.

Defendant's conduct was willful, malicious and/or done with reckless indifference to Plaintiff's federally protected rights. Defendant should be assessed punitive damages, including pursuant to 42 U.S.C. §2000e-5(k) as incorporated into the ADA by 42 U.S.C. §12117(a).

86.

As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer mental stress, humiliation, inconvenience, and loss of enjoyment of life all to his non-pecuniary loss in an amount to be determined at trial. Defendant should be assessed compensatory damages, including pursuant to 42 U.S.C. §12117(a).

/ / /

/ / /

87.

As a result of Defendant's unlawful conduct, Plaintiff has incurred and continues to incur lost wages and benefits in an amount to be proven at trial. Plaintiff will continue to lose income and benefits in the future. Defendant should be assessed economic damages, including pursuant to 42 U.S.C. §12117(a).

88.

Plaintiff also seeks his costs and attorneys' fees pursuant to 42 U.S.C. § 12205.

## FIFTH CLAIM FOR RELIEF

### ADA – 42 U.S.C. § 12112 Disability Discrimination / Failure to Accommodate

89.

Plaintiff re-alleges and incorporates by reference the facts and allegations set forth in the prior paragraphs of this complaint.

90.

The ADA, through 42 U.S.C. § 12112, prohibits discrimination against a qualified individual on the basis of disability. Such discrimination includes, among other prohibited acts, failure to make reasonable accommodations for an individual's known physical or mental limitations.

91.

Plaintiff is a "qualified individual" with a "disability" that substantially limited major life activities as those terms are defined in 42 U.S.C. §§ 12102 and 12111 but Plaintiff could perform the job with or without an accommodation.

92.

Defendants violated 42 U.S.C. § 12112 through, without limitation, one or more of the following actions: (1) Defendants failed to meaningfully engage in the interactive process to determine reasonable accommodations for Plaintiff's disabilities; or (2) Defendants discharged Plaintiff and/or denied him employment opportunities because of his disabilities or Defendants' need to make accommodations; either or both actions resulted in damages.

93.

Defendant's conduct was willful, malicious and/or done with reckless indifference to Plaintiff's federally protected rights. Defendant should be assessed punitive damages, including pursuant to 42 U.S.C. §2000e-5(k) as incorporated into the ADA by 42 U.S.C. §12117(a).

94.

As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer mental stress, humiliation, inconvenience, and loss of enjoyment of life all to his non-pecuniary loss in an amount to be determined at trial. Defendant should be assessed compensatory damages, including pursuant to 42 U.S.C. §12117(a).

95.

As a result of Defendant's unlawful conduct, Plaintiff has incurred and continues to incur lost wages and benefits in an amount to be proven at trial. Plaintiff will continue to

lose income and benefits in the future. Defendant should be assessed economic damages, including pursuant to 42 U.S.C. §12117(a).

96.

Plaintiff also seeks his costs and attorneys' fees pursuant to 42 U.S.C. § 12205.

## SIXTH CLAIM FOR RELIEF

### ADA – 42 U.S.C. § 12203 – Disability Retaliation

97.

Plaintiff re-alleges and incorporates by reference the facts and allegations set forth in the prior paragraphs of this complaint.

98.

The ADA, through 42 U.S.C. § 12203, prohibits retaliation against or interference with an individual who invokes employment rights under the ADA or who files a charge or complaint of disability discrimination.

99.

Defendants violated 42 U.S.C. § 12203 through, without limitation, discharging Plaintiff and/or depriving him of employment opportunities based in whole or in part on his requests for disability accommodations and invocation of disability protections.

100.

Defendant's conduct was willful, malicious and/or done with reckless indifference to Plaintiff's federally protected rights. Defendant should be assessed punitive damages,

including pursuant to 42 U.S.C. §2000e-5(k) as incorporated into the ADA by 42 U.S.C. §12117(a).

101.

As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer mental stress, humiliation, inconvenience, and loss of enjoyment of life all to his non-pecuniary loss in an amount to be determined at trial. Defendant should be assessed compensatory damages, including pursuant to 42 U.S.C. §12117(a).

102.

As a result of Defendant's unlawful conduct, Plaintiff has incurred and continues to incur lost wages and benefits in an amount to be proven at trial. Plaintiff will continue to lose income and benefits in the future. Defendant should be assessed economic damages, including pursuant to 42 U.S.C. §12117(a).

**DEMAND FOR JURY TRIAL**

103.

Plaintiff demands a jury trial on all claims and issues to the extent allowed under the law.

**PRAYER FOR RELIEF**

104.

WHEREFORE, Plaintiff requests the following judgments against and relief from Defendants:

a)  Economic damages in an amount to be proven at trial;

b) Non-economic damages in an amount to be proven at trial;

c) Reasonable costs and attorney fees;

d) Punitive damages;

e) Equitable relief including a permanent injunction enjoining Defendants from engaging in any employment practice which discriminates on the bases as alleged in this complaint;

f) Prejudgment and post-judgment interest as appropriate and allowed by law;

g) On all claims, as applicable, amounts necessary to offset the income tax consequences of receiving a lump sum payment, rather than receiving payment of wages over the applicable time frame;

h) All such other relief as this Court may deem proper.

DATED June 16, 2025.                     **BEACON EMPLOYMENT LAW**

s/David C. Higgs
David C. Higgs, OSB No. 114193
Talia Guerriero, OSB No. 115271

*Of Attorneys for Plaintiff*